### BROWN *v.* COLLUM *et al.*

1. A contract which stipulated that a mill-owner, after making a specified alter-ation in an existing dam, might " then keep the water at the height the dam will then raise it," fixed and limited the height to which he might raise the water in the stream across which the dam stood, and did not confer upon him the right to thereafter erect and maintain a new dam of the same height as was the old one after the alteration thereof, if as matter of fact the new dam, because of better construction or for any other reason, raised the water higher than did the altered old one.
2. An instruction which requires a jury to perform an impossibility should not be given.

Argued October 2,—Decided October 29, 1900.

Trespass.    Before Judge Fite.    Whitfield superior court.    April term, 1900.

*R. J. & J. McCamy,* for plaintiff.
*Shumate & Maddox,* for defendants.

LUMPKIN, P. J.    This case, as presented here, turns upon the con-struction of a contract which was in these words:

" In consideration that Smith Treadwell will go on improving his mill property on Connasauga river near Tilton, and not suspend operations now, as he speaks of doing, and will so arrange his dam as to make the middle portion of it eight inches lower than it now is, we agree that he may then keep the water at the height the dam will then raise it, and claim no damages for what the water may be on our lands, respectively, on account of the keeping up of said dam.

" Given under our hand and seal, this August 21, 1873.

H. H. Green and others."

1. Properly construed, this instrument gave to Smith Treadwell

and his successors in title the right to maintain a dam with a designated capacity for backing water, and not a dam of any given height.   He was to make the middle portion of an existing dam eight inches lower than it was on the day the contract was executed.   The parties contemplated, as a result of his so doing, that this identical dam would then raise the water in the stream to a certain point.   It was their intention that this point, when thus fixed, should indicate the limit in height to which Treadwell would be entitled to raise the water; and this limit was to be ascertained, not by reference to the vertical height of the dam in feet and inches, but by what the dam then standing should actually do in the way of raising water after the middle portion thereof had been made eight inches lower.   The standard which the parties evidently had in mind was one of capacity, and not of height.   If those who signed the instrument had intended to give Treadwell the right to maintain a dam of a specified height, and take, without claiming damages, all the resulting injurious consequences to their lands, they would most probably have said so in the writing; for it would have been both easy and natural so to do.   It is certain they did not say so, and the language they actually employed is not only free from ambiguity but clear and plain.   They first fixed as definitely as possible the sort of dam they were willing for Treadwell to keep up, viz., the very dam he then had, with a specified alteration; and they then agreed that he might keep the water — not the dam — at a designated height, to wit: the height to which the dam, the one already described, would raise it.   The court, in charging the jury as to the meaning of this contract, used some language which might have been understood as being in harmony with the views above expressed, but, in concluding his instructions on this point, used other language susceptible of no other interpretation than that if the dam under investigation was "no higher than the Smith Treadwell dam," there was no violation of the original contract in maintaining the dam complained of.   At best, therefore, the charge did not clearly and explicitly inform the jury what the true meaning of the contract was.   Counsel for the plaintiff in error presented written requests embodying a correct construction of the contract as we understand it.   These were refused, and as a consequence there must be a new trial.   In view of what is said above, we think it apparent that this was a case in which the plaintiff

was entitled to have his requests given to the jury, for they were accurate and pertinent, and the refusal to give them at least left the jury in a state of uncertainty as to how they should deal with the most vital question in the case.

2. In his petition the plaintiff prayed for a decree requiring the defendant "to lower said dam fifteen inches or such other distance as the jury on the trial of this case may say it is too high." The plaintiff, in his motion for a new trial, complains of the instructions given by the court with regard to this matter. They were to the effect that if the jury found that the dam was higher than the contract authorized, they might specify in feet and inches how high it should be, measuring from the bottom. It was contended that these instructions were erroneous, for the reason that the jury should have been directed to find how much lower the dam should be made, by stating how many feet or inches should be removed from the top. The charge excepted to was harmless, because the jury found, as matter of fact, the dam was not "too high." We think, however, it was erroneous, but do not base this conclusion on the objection made by the plaintiff in error. The truth is, the jury were directed to perform an impossibility in case they found that the dam as it stood was not maintainable under the Smith Treadwell contract. Under the evidence no set of men could possibly have ascertained or described what alterations in the dam would have made it of the same capacity for raising water as was the old Treadwell dam after being lowered in the middle as the contract required.

*Judgment reversed. All the Justices concurring.*